IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| WILLIAM WHITTMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:21-cv-00077 (RDA/TCB) |
| | ) | |
| ASSOCIA, ASSOCIATIONS, INC., | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Associations, Inc. ("Associa"), Community Management Corporation ("CMC"), and Woodburn Village Condominium Unit Owners Association's ("the Association") ("Defendants'") Motion to Dismiss (Dkt. 9) and William Whittman's ("Plaintiff") Motion to Strike (Dkt. 21) ("Motions"). Considering Plaintiff's Motion to Strike Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss (Dkt. 21), Defendants' Opposition (Dkt. 22), and Plaintiffs' Reply (Dkt. 23), the Court DENIES the Motion to Strike and GRANTS the Motion to Dismiss for the reasons that follow.

### I.  BACKGROUND

#### A.  Factual Background

Plaintiff, proceeding *pro se*, alleges violations of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq*. for failing to accommodate and for retaliation; a violation of § 504 of the Rehabilitation Act of 1973; and other state law claims on behalf of his son who suffers from mental disabilities. Dkt. 1-1.

On February 21, 2018, Plaintiff leased a condominium unit owned by Xiaomei Ma ("Landlord"). Dkt 8, ¶ 60. The unit required a number of repairs upon ratification of the contract,

which Plaintiff documented with the listing agent of the unit present. *Id.* ¶ 62. The Defendants include Associa, a rental management company, CMC, a subsidiary of Associa which specializes in marketing multi-family rental properties which receive Federal and State subsidies, and the Association which is managed by Associa. *Id.* ¶¶ 73-74, 122-23.

Upon moving into the unit, Plaintiff alleges that Defendants discriminated against him and his mentally disabled son by not allowing them to use a restricted driveway to move furniture more efficiently into the unit "because the Fire Department did not allow them to do so." *Id.* ¶ 71. However, Plaintiff alleges that the Defendants allowed other residents and employees access to the driveway. *Id.* ¶ 77.

After moving into the complex on March 1, 2018, Plaintiff found that none of the repairs to make the unit "habitable" had been made, which included a non-functioning doorbell with exposed wiring, a hypersensitive smoke detector, a stove that did not light easily and had a gas leak, a toilet which did not flush, and a loose kitchen light fixture—all of which caused Plaintiff great consternation. *Id.* ¶¶ 80-88. Plaintiff also alleges that the "most urgent thing for him to fix" was the unit's front door "which made a tremendous loud noise, by itself, as if a powerful wind blew it closed, shaking the entire stairwell, as if not held with extra case, to prevent this." *Id.* ¶ 89. Plaintiff further alleges the door was the only malfunctioning door in the complex. *Id.* ¶ 111. Such an issue posed a problem for neighbors given that "the lightest footsteps on the units above" could be heard by units below. *Id.* ¶ 90. Moreover, Plaintiff's son's "mental disability" "forc[ed] him to pace often in and out of that door" and Plaintiff's son did not "exercise extra care to prevent the unusual loud noise of this defective door." *Id.* ¶ 93.

Plaintiff's son suffers from "severe clinical depression, anxiety and post-traumatic disorder." *Id.* ¶¶ 47, 94. After observing his son open and close the door repeatedly, Plaintiff

confirmed his son was not purposefully slamming the door.  *Id.* ¶¶ 100-07.  To avoid complaints from neighbors, Plaintiff wanted Landlord to fix the door.   But seeing that Plaintiff had "no leverage, at this point, to enforce the repairs" because he had already paid the annual rent in full, Plaintiff was unable to compel Landlord to inspect and potentially repair the door.  *Id.* ¶¶ 108. Instead, on March 15, 2018, Plaintiff sent a letter to three neighboring units and to the Defendants, notifying them that his son "lost his mind last year [] and is struggling with his condition."  *Id.* ¶¶ 117-22.  The letter ended by noting that at month's end his son "is scheduled to have his usual shot and [Plaintiff] hope[s] that will improve his condition a little." *Id.* ¶ 122.  Plaintiff received no acknowledgements from any of the parties receiving the letter, including the three Defendants.  *Id.* ¶ 124.  Instead, Plaintiff alleges that Defendants used the malfunctioning door as a "pretext to evict" him. *Id.* ¶ 135.

Nine days earlier, without Plaintiff's awareness, Defendants had sent a letter to Landlord informing them of a noise violation as a result of "'a loud TV, loud music, banging on the floor and screaming and yelling' emanating from the unit." *Id.* ¶ 138.  Additionally, the letter flagged that "cigarette butts and cigarette packs" had been "thrown on the [ground] and the patio below," which was a "fire hazard and unsanitary." *Id.*  Defendants' letter requested that "the residents of [Landlord's] unit and their guests reduce the level of noise coming from [Landlord's] unit" to avoid "disturb[ing] other residents especially during the Association's quiet hours from 11pm through 8am." *Id.*  In conclusion, the letter warned of "[f]urther action [] if additional complaints are reported" while also advising Landlord to notify management immediately if they felt they had received the letter in error so that the Association could correct its records and "pursue the correct party." *Id.*

Plaintiff admits that his youngest child, who is not alleged to be mentally disabled, "threw, once, an empty cigarettes box from the window of his room." *Id.* ¶ 160. On August 6, 2018, Landlord sent Plaintiff an e-mail notifying him that Landlord had received "notices from the management company regarding various violations of condo Bylaws" as well as a "formal Cease and Desist letter" from an attorney representing the Association with evidence of cigarettes and cigarette packs on the ground "in light of the repeated violations." *Id.* ¶ 162. Landlord asked Plaintiff to vacate the unit "as soon as possible" and clarified that Landlord would "return the rent for the remainder of your lease on a prorated basis." *Id.*

At an unspecified time, Plaintiff received a letter from counsel for the Association informing Plaintiff of reports that a "juvenile male" considered to be an occupant of Plaintiff's unit "exposed his genitalia to the children playing on the playground . . . appears to be smoking marijuana on the Condominium property . . . frequently screams (threatening statements) and bangs on doors often between the hours of 1am to 6am . . . [and] was heard yelling that he would 'get a gun and shoot everyone in the building if he wasn't let out of his room'." *Id.* ¶ 170. The letter noted that the reporting resident and their family "were suffering psychological and emotional harm as a result of this alleged conduct." *Id.* As a result, the Association requested "any corrective action that may be necessary to ensure such conduct does not occur or continue to occur." *Id.*

On October 30, 2018, Plaintiff responded to Landlord's email notifying Landlord that "nothing in [the Association's Letter] can make [Plaintiff and his family] move out and that those [expletive] . . . are . . . in violation of the protected rights of individuals with disabilities" and noted that his son "suffers with depression, schizophrenia and anxiety." *Id.* ¶ 173.

4

On October 31, 2018, Plaintiff wrote an email to Landlord stating, among other things, that he was "sure" Landlord had made "hasty and wrong decisions due to the duress from the [A]ssociation." *Id.* ¶ 176. That same day, Landlord responded, directing Plaintiff to the Condo Bylaws and Declaration and Item #9 of the lease signed by Plaintiff. Those provisions require a tenant to comply with "all applicable laws, ordinances and rules and regulations of Landlord and the Association" and state that failure to comply is grounds for termination of the lease. *Id.* ¶ 177.

Defendants then allegedly delivered fliers to the residents of the condominium building where Plaintiff resided alerting residents to noise complaints "regarding people screaming and arguing in their units, loud music/TV and loud noises in the building" and requesting that all residents of the condominium building "be mindful of everyone" and to observe "quiet hours" between 11:00 pm and 8:00am. *Id.* ¶ 180. On November 2, 2018, another resident sent a complaint to the Association describing similar disturbances alleged against Plaintiff's unit and noting that "[t]wo police came but did not do anything because . . . [Plaintiff] can see police car from the unit." *Id.* ¶ 182. Two hours later, another complaint was made regarding Plaintiff's unit describing shouting that was "frightening" and disturbed sleep. *Id.*

Plaintiff then alleges that the residents, in their capacity as members of the Association, "engaged in coward and illegal acts of calling the Police Department" to Plaintiff's residence "in the middle of the night." *Id.* ¶ 185. As a result of the alleged harassment imposed on Plaintiff and his family, Plaintiff's youngest son "tried many times to put an end to his life" while Plaintiff's mentally disabled son faced "more acute mental distress." *Id.* ¶¶ 194-95.

On November 9, 2018, Associa notified Landlord, with Plaintiff copied on the email, that maintenance had been completed to install weather stripping around Plaintiff's door but that "the best remedy would be to install a door closer on the inside of the home," which would require

Landlord to hire a contractor.  *Id.* ¶ 204.  Following the repair, Plaintiff alleges that no additional complaints were made against Plaintiff.  *Id.* ¶ 205.

Plaintiff then alleges that Defendants retaliated against Plaintiff by towing his car due to an expired parking permit.  *Id.* ¶ 206.  On November 13, 2018, following numerous calls to police to Plaintiff's residence, Plaintiff received an eviction notice.  *Id.* ¶¶ 193, 208.  Plaintiff's two sons left the unit for treatment.  *Id.* ¶ 211.  On March 14, 2019, Plaintiff continued to reside in the unit when a handyman allegedly sent by the Association to fix a leak from the unit entered without Plaintiff's permission.  During their interaction, the handyman relayed to Plaintiff that "[p]eople in the office . . . talk that [Plaintiff] ha[s] been evicted." *Id.* ¶¶ 218-31.  Plaintiff subsequently moved out of the unit and no longer resides within the complex.  *Id.* ¶ 241.

B.   Procedural Background

On January 21, 2021, Plaintiff filed in this Court, a Complaint alleging violations of the FHA for failing to accommodate and for retaliation; a violation of § 504 of the Rehabilitation Act of 1973; a violation of Title II of the Americans with Disabilities Act ("ADA"); and other state law claims.  Dkt. 1-1.  On February 25, 2021, Defendants filed a Motion to Dismiss the Complaint along with a Memorandum in support of the Motion.  Dkt. Nos. 4; 5.  After Defendants filed their Motion to Dismiss Plaintiff's Complaint, Plaintiff filed an Amended Complaint on March 16, 2021, again alleging violations of the FHA, 42 U.S.C. § 3601, *et seq.* for failing to accommodate and retaliation; a violation of § 504 of the Rehabilitation Act of 1973; and various state law claims but removed the Title II ADA claim.  *See* Dkt. Nos. 1; 4; 8.  Plaintiff seeks actual damages of $20,000,000, reasonable attorney's fees and court costs, punitive damages, and civil penalties. Dkt. 8 at 59.  This Court subsequently denied Defendants' first Motion to Dismiss as moot in light of Plaintiff's Amended Complaint.  Dkt. 25.

On March 29, 2021, Defendants properly filed a Motion to Dismiss the Amended Complaint and a Supporting Memorandum, which noticed a hearing for May 12, 2021.  Dkt. Nos. 9; 10.  On April 16, 2021, Plaintiff filed a Motion to Recuse and Motion to Stay.  Dkt. Nos. 13; 15.  On April 19, 2021, Plaintiff filed an Opposition to Defendants' Motion to Dismiss the Amended Complaint ("Opposition").  Dkt. 17.  On April 26, 2021, Defendants filed their Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss ("Reply").  Dkt. 18.  On April 28, 2021, Plaintiff filed a Motion to Withdraw the previously filed Motions to Recuse and Motion to Stay and this Court granted the Motion to Withdraw.  Dkt. Nos. 19; 20.

On April 30, 2021, Plaintiff filed a Motion to Strike ("Motion to Strike"), requesting a ruling without a hearing.  Dkt. 21.

This Court has original jurisdiction to decide these motions under 28 U.S.C. § 1331.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal when the Plaintiff has failed to state a claim for which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim for relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Two principles govern the application of the *Twombly* pleading standard. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id* at 679.  A plaintiff has failed to state a claim where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.  *Id.*

Mindful that Plaintiff is proceeding *pro se*, this Court liberally construes his filings. *Jackson v. Lightsey*, 775 F.3d 170, 177 (4th Cir. 2014). That a *pro se* complaint should be liberally construed neither excuses a *pro se* plaintiff of his obligation to "clear the modest hurdle of stating a plausible claim" nor transforms the court into his advocate. *Green v. Sessions*, No. 1:17-cv-1365, 2018 WL 2025299, at *8 (E.D. Va. May 1, 2018), *aff'd*, 744 F. App'x 802 (4th Cir. 2018).

### III.   ANALYSIS

#### A.   Motion to Strike

This Court first addresses Plaintiff's Motion to Strike Defendants' Reply.

Rule 12(f) of the Federal Rules of Civil Procedure empowers this Court to "strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." (emphasis added). Moreover, Federal Rule of Civil Procedure 7 distinguishes pleadings from motions. *See also Int'l Longshoremen's Ass'n, S.S. Clerks Local 1624 v. Virginia Int'l Terminals*, 904 F. Supp. 500, 504 (E.D. Va. 1995) (noting that plaintiff's motion to strike defendant's reply brief was an improper challenge considering the Federal Rules of Civil Procedure); *Structural Concrete Prods., LLC v. Clarendon Am. Ins.*, 244 F.R.D. 317, 321 (E.D. Va. 2007) (noting that Rule 7(a) provides the categories of filings that constitute pleadings for purposes of Rule 12(f) and further finding that briefs filed in response to motions do not qualify as pleadings).

Plaintiff relies on Federal Rule of Civil Procedure 7(a)(7) to argue that Defendants improperly filed a Reply without obtaining leave from this Court. However, the rule upon which Plaintiff relies applies solely to pleadings and not motions like the one that is the subject of Plaintiff's Motion to Strike. Instead, Local Rule 7(F)(1) permits Defendants to file a Reply to Plaintiff's Opposition within six calendar days of having been served by Plaintiff without obtaining the Court's leave:

> All motions, unless otherwise directed by the Court and except as noted herein below in subsection 7(F)(2), shall be accompanied by a written brief setting forth a concise statement of the facts and supporting reasons, along with a citation of the authorities upon which the movant relies. Unless otherwise directed by the Court, the opposing party shall file a response brief and such supporting documents as are appropriate, within fourteen (14) calendar days after service *and the moving party may file a reply brief within six (6) calendar days after the service of the opposing party's response brief.* The fourteen (14) and six (6) calendar day periods for response and reply briefs shall apply without regard to, and are not expanded by, the mode of service used for those briefs, notwithstanding the provisions of Fed. R. Civ. P. 6(d). No further briefs or written communications may be filed without first obtaining leave of Court.

Local Rule 7(F)(1) (emphasis added). As a result, Plaintiff's Motion to Strike is not a proper method for challenging Defendants' Reply.

Additionally, Plaintiff neglected to properly file a "written brief setting forth a concise statement of the facts and supporting reasons, along with a citation of the authorities upon which the movant relies." *Id.* This procedural defect alone is sufficient grounds to deny Plaintiff's Motion to Strike, although this Court recognizes Plaintiff's *pro se* status and therefore grants leniency on this score. *See, e.g.*, *Steele v. Goodman*, No. 3:17-cv-601, 2019 WL 3367983, at **1-2 (E.D. Va. July 25, 2019) (noting failure to include a separate brief supporting a motion is a procedural defect worthy of dismissal).

The Court does however also note that Defendants filed their Reply on April 26, 2021, seven calendar days after having been electronically served with Plaintiff's Opposition on April 19, 2021. Recognizing that Defendants did not obtain leave from this Court for an extension of time to file their Reply, this Court deems Defendants' Reply (Dkt. 18) withdrawn.

### B. Motion to Dismiss

While Plaintiff alleges thirteen FHA violations and classifies each as a separate count in his Amended Complaint, for purposes of clarity, this Court will group these violations

appropriately into four categories of claims: (1) violations under the FHA; (2) violations under the Rehabilitation Act; (3) disparate treatment; and (4) violations under Virginia law.

This Court takes Plaintiff's circumstances, allegations and the resulting difficulties Plaintiff and his family have and continue to experience very seriously.  However, for the reasons that follow, this Court finds that Plaintiff has failed to plead sufficient facts supporting a plausible basis for any of the claims he asserts in his Amended Complaint, which this Court has liberally construed.

1. Plaintiff fails to plead sufficient facts supporting a plausible basis for a violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*

a. *Reasonable Accommodation Claim*

Plaintiff brings a claim under Title VIII of the FHA, alleging that Defendants denied Plaintiff and his family "reasonable and necessary repairs and accommodations, that would provide disabled persons and/or their families an equal opportunity to enjoy a dwelling."  Dkt. 8 ¶ 14.  Plaintiff also claims, pursuant to Section 818 of the FHA, that Defendants illegally retaliated against Plaintiff after Plaintiff told Defendants he planned to take legal action against them.  *Id.*

The FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services of facilities with such dwelling, because of a handicap."  42 U.S.C. § 3604(f)(2).  The statute further defines handicap as "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities; (2) a record of having such an impairment; or (3) being regarded as having such an impairment."  *Id.* § 3602(h).  Discrimination is defined within the statute to include the "refusal to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  *Id.* § 3604(f)(3)(b).

As Plaintiff rightly cites, a reasonable accommodation claim under the FHA requires a three-step test whereby the complaint must plead an accommodation that is "(1) reasonable and (2) necessary (3) to afford handicapped persons equal opportunity to use and enjoy housing." *Bryant Woods Inn, Inc. v. Howard Cty., Md.*, 124 F.3d 597, 603 (4th Cir. 1997).   The reasonableness requirement considers both the burdens of the accommodation to the provider of such accommodation and the benefits of such accommodation to the handicapped.  *Id.* at 604.  The "necessary" element "requires the demonstration of a direct linkage between the proposed accommodation and the 'equal opportunity' to be provided to the handicapped person."  *Id.*; *Matarese v. Archstone Pentagon City (f/k/a Parc Vista)*, 761 F. Supp. 2d 346, 364 (E.D. Va. 2011). If the proposed accommodation "provides no direct amelioration of a disability's effect," the accommodation cannot be considered "necessary."  *Id.* (citing *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995).  Lastly, the "equal opportunity" prong "does not require accommodations that increase a benefit to a handicapped person above that provided to a nonhandicapped person with respect to matters unrelated to the handicap."  *Id.*

Plaintiff requested that an accommodation be made to fix the loud door of his unit, which his son opened and closed repeatedly throughout the day and night.  While Plaintiff has sufficiently pleaded facts that form a plausible basis to conclude that Plaintiff's son was mentally disabled, liberally construing Plaintiff's claim still fails under the *Bryant* test.  First, requiring that Defendants fix the door to limit the noise it made upon closing would not appear to significantly burden Defendants.  However, such an accommodation is not necessary to afford Plaintiff's son equal opportunity to use and enjoy housing.  Plaintiff's son's enjoyment was not dependent on whether or not the door was repaired.  Rather, his ability to enjoy his housing was negatively impacted by knowledge of complaints from neighbors as well as visits from police, as a result of

Plaintiff's son's behavior unrelated to opening and closing the door.  Nine days prior to his March 15, 2018 letter to Defendants notifying them of his son's condition, Defendants sent a letter to Landlord informing Landlord of a noise violation as a result of "'a loud TV, loud music, banging on the floor and screaming and yelling' emanating from the unit." *Id.* ¶ 138.  This complaint had no nexus to the noise caused by Plaintiff's son opening and closing the unit's door.  The March 6, 2018 letter from Defendants also noted the fire hazard and unsanitary nature of littering the ground with "cigarette butts and cigarette packs."  That complaint stemmed from the behavior of Plaintiff's other son who inasmuch admitted to the allegations in the March 6 letter. *Id.* ¶ 160.  In no way did the letter reference Plaintiff's son's mental disability.  Lastly, Plaintiff has not pled sufficient grounds to plausibly believe that fixing the door would have altered the behavior driving the complaints numerous residents made against Plaintiff's unit, including: TV and music sound levels, banging on the floor, screaming, yelling, indecent exposure, smoking marijuana at a time when such offense was illegal under state law, or throwing cigarettes off the balcony of the unit onto the yard. *Id.* ¶¶ 138, 162, 170.

### b.  Retaliation Claim

As to Plaintiff's claim that Defendants retaliated against Plaintiff for threatening legal action, Plaintiff also fails to plead sufficient factual bases to establish a plausible retaliation claim. A retaliation claim requires a showing that "the defendant[s] took adverse action in retaliation for protected activity." *Matarese*, 795 F. Supp. 2d at 442.  Such a claim requires Plaintiff to present facts that plausibly meet the following elements: "(1) [Plaintiff] was engaged in protected activity; (2) [Defendants were] aware of that activity; (3) [Defendants] took adverse action against Plaintiff; and (4) a causal connection existed between the protected activity and the asserted adverse action." *Hall v. Greystar Mgmt. Servs., L.P.*, 637 F. App'x 93, 98 (4th Cir. 2016) (citing *King v. Rumsfeld*, 328 F.3d 145, 150-51 (4th Cir. 2003)).

12

Here, Plaintiff rightly asserts that bringing a lawsuit alleging discrimination is a protected activity under the FHA and that Plaintiff was served with an eviction notice some time after having notified Landlord of his impending lawsuit against Defendants.  Dkt. 8 ¶¶ 38, 193, 208.  However, Plaintiff's liberally construed Amended Complaint fails to allege that Defendants were aware of that activity and instead, Plaintiff solely provides evidence that Landlord was aware of the impending lawsuit.  And because Landlord rather than Defendants evicted Plaintiff, Plaintiff's only recourse is to show "more than a sheer possibility" that Landlord acted at the direction of Defendants.  *Iqbal*, 556 U.S. at 678.  The Complaint makes no such allegations.

Even if Plaintiff did show Defendants were aware of the lawsuit and took adverse action against him, Plaintiff provides no evidence that receiving the notice of legal action caused Defendants to evict Plaintiff.  Instead, the Amended Complaint provides numerous facts demonstrating that complaints from at least three separate neighboring residents to Defendants—regarding acts attributable to both of Plaintiff's sons and to Plaintiff's unit more generally—directly contributed to Plaintiff's eviction.  *Id.* ¶¶ 138, 182, 185.  Moreover, any claim by Plaintiff that Defendants adversely towed Plaintiff's car in retaliation against Plaintiff's legal action suffers from the same causal showing defects.

2.  Plaintiff fails to plead sufficient facts supporting a plausible basis for a claim under Section 504 of the Rehabilitation Act.

Plaintiff asserts that he may recover pursuant to Section 504 of the FHA ("Rehabilitation Act").  The Rehabilitation Act provides in relevant part:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . . .

29 U.S.C. § 794.

Plaintiff's liberally construed Amended Complaint fails to allege facts that bring Plaintiff's claim within the four corners of the Rehabilitation Act. While Plaintiff provides an image describing the business of one of the Defendants, CMC, which notes that CMC "is a full service Property Management company specializing in the management of multi-family rental properties utilizing Federal and State financing and subsidy programs," Plaintiff fails to specifically allege that Defendants received federal government assistance in connection with their management of Plaintiff's condominium complex. Dkt. 8 ¶ 74. Fatal to his claim, Plaintiff alleges that he provided Landlord with the entire annual rent and security deposit in advance of moving into the unit without any federal aid. *Id.* ¶ 66. Put simply, this claim is not well-pleaded. *Iqbal*, 556 U.S. at 679.

3.  Plaintiff fails to plead sufficient facts supporting a plausible basis for a disparate treatment claim against Defendants. any of Plaintiff's Virginia law claims.

Plaintiff alleges that Defendants' refusal to repair the malfunctioning door in Plaintiff's unit demonstrated disparate treatment of Plaintiff and served as a pretext to evict Plaintiff from the unit. Dkt. 8 ¶¶ 21, 135. A disparate treatment claim requires that Plaintiff "raise plausible factual allegations of a discriminatory intent or motive." *Nat'l Fair Hous. Alliance v. Bank of Am., N.A.*, 401 F. Supp. 3d 619, 630-31 n.8 (D. Md. 2019). "[I]solated" "accidental" or "sporadic discriminatory acts" will not establish discriminatory intent or motive. *Id.* Rather the Plaintiff must plead sufficient factual grounds to demonstrate that Defendants' standard operations regularly entailed discriminatory practices. *Id.*

While Plaintiff alleges that Defendants' legal counsel had successfully sued Landlord and the listing agent in Fairfax County General District Court "in a totally unrelated matter," Plaintiff proffers no factual grounds to demonstrate Defendants engaging in a pattern of discriminatory practices against similarly situated tenants. Dkt. 8 ¶ 130. Additionally, Defendants routinely referenced the complaints of multiple residents and raised their general policy to abide by noise

minimization practices under the Association's Bylaws—of which Plaintiff was a part.  Defendants also allegedly delivered fliers to the residents of the condominium building where Plaintiff resided alerting residents to noise complaints "regarding people screaming and arguing in their units, loud music/TV and loud noises in the building" and requesting that *all* residents of the condominium building "be mindful of everyone" and to observe "quiet hours" between 11:00 pm and 8:00am. *Id.* ¶ 180.  Moreover, Plaintiff admits that his youngest son, who is not alleged to be mentally disabled, caused at least one of the sources of complaints filed against Plaintiff when he "threw, once, an empty cigarettes box from the window of his room." *Id.* ¶ 160.

The steps taken by Defendants do not establish a plausible claim for disparate treatment against Plaintiff on the basis of Plaintiff's son's mental disability.  Again, put simply, Defendants reacted to complaints that did not directly relate to Plaintiff's son's mental disability.  Therefore, no plausible disparate treatment claim has been pleaded in Plaintiff's liberally construed Amended Complaint.

4. Plaintiff fails to plead sufficient facts supporting a plausible basis for any of Plaintiff's Virginia law claims.

*a. Fraud, Misrepresentation and False Accusations*

Count 3 of Plaintiff's Amended Complaint asserts that Defendants "intentionally and deliberately misrepresent[ed]" the malfunctioning door to the landlords and their agents "to trick, induce and force them, to evict the disabled tenant . . . under false pretenses . . . ." *Id.* ¶¶ 22, 125. It is unclear what misrepresentation Plaintiff is alleging here given that the malfunctioning door was blatantly apparent to anyone opening and closing it.  More importantly, Plaintiff's fraud and misrepresentation claims must satisfy the degree of particularity Federal Rule of Civil Procedure 9(b) requires.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (establishing that Rule 9(b) requires that a plaintiff must state with particularity "the time, place, and contents

of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.") (quoting 5 Wright & Miller, *Fed. Practice & Proc.: Civil* § 1297, at 590 (2d ed. 1990)).  "Failure to comply with Rule 9(b)'s pleading standard is treated as a failure to state a claim under Rule 12(b)(6)." *Fravel v. Ford Motor Co.*, 973 F. Supp. 2d 651, 656 (W.D. Va. 2013).

Here, Plaintiff fails to state a claim for fraud or misrepresentation with any particularity and thus falls short of the Rule 9(b) pleading standard.  Indeed, Plaintiff notes in his Amended Complaint that he "has selected not to seek any relief based on common law tort, but if the defendants demand that these counts of fair housing violations be proven as to all elements of fraud for example . . . plaintiff has no objection to it, [while] . . . reserv[ing] the right to supplement the claims accordingly."  Dkt. 8, ¶ 33.  However, it is not the role of the Court or the opposing parties to advocate what claims Plaintiff should or should not raise in their complaint.  Moreover, this Court will not bargain what arguments can and cannot be raised in a plaintiff's complaint.

Count 7 of Plaintiff's Amended Complaint further alleges that Defendants made false accusations that Plaintiff "was engaged in criminal activities [and] harassing and threatening the landlords" without a "shred of evidence to back up their accusations" against Plaintiff.  However, Plaintiff's liberally construed Amended Complaint provides no plausible factual basis to conclude that Defendants had falsely crafted these complaints against Plaintiff in light of the facts presented, which clearly show these complaints were raised by Plaintiff's neighbors.

*b.  Malicious Prosecution*

Plaintiff asserts a claim of malicious prosecution by Defendants' encouragement of certain members of the Association who filed complaints against Plaintiff and called the police on multiple occasions during the late evening to investigate Plaintiff's unit with the intentional and deliberate

goal of inflicting "severe mental distress and emotional pain and suffering to [P]laintiff's family." *Id.* ¶¶ 23-25, 27-30, 184.

In Virginia, Plaintiff may establish a cognizable malicious prosecution claim by demonstrating that an action against Plaintiff was "(1) malicious; (2) instituted by or with the cooperation of the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff." *Daniczek v. Spencer*, 156 F. Supp. 3d 739, 754 (E.D. Va. 2016) (quoting *Lewis v. Kei*, 281 Va. 715, 722 (2011)). In this case, Plaintiff fails under the second prong to allege any facts that Defendants privately coordinated with residents to file complaints against Plaintiff at midnight hours, that Defendants altogether forged the complaints against Plaintiff, or that Defendants coerced residents to file their complaints against Plaintiff. Therefore, despite liberally construing Plaintiff's Amended Complaint, Plaintiff cannot make out a claim for malicious prosecution.

## IV.   CONCLUSION

It is clear that Plaintiff's circumstances and that of his family are challenging, compelling, and undeniable. However, the circumstances presented do not put forth a justiciable cause of action in this Court. Accordingly, in light of the Motions before this Court, it is hereby ORDERED that Defendants' Motion to Dismiss Plaintiff's Complaint (Dkt. 9) is GRANTED as to all counts in Plaintiff's Amended Complaint (Dkt. 8); and it is

FURTHER ORDERED that Plaintiff's Motion to Strike (Dkt. 21) is DENIED; and it is

FURTHER ORDERED that Defendant's Reply (Dkt. 18) is WITHDRAWN.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within 30 days of the date of entry of this Memorandum Opinion and Order. A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Plaintiff wants to

appeal.  Plaintiff need not explain the grounds for appeal until so directed by the court of appeals.

Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

        It is SO ORDERED.

Alexandria, Virginia
January 21, 2022

                                                    _____ /s/ _____
                                                    Rossie D. Alston, Jr.
                                                    United States District Judge

18